## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| Louise Conklin, | : | Case No. 5:07CV2667 |
| Plaintiff | : | Judge James S. Gwin |
| v. | : | Magistrate Judge David S. Perelman |
| Commissioner of Social Security, | : | |
| | : | **REPORT AND RECOMMENDED** |
| Defendant | : | **DECISION** |

The sole issue raised in this action brought pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the defendant's final determination denying plaintiff's claim for supplemental security income, 42 U.S.C. §1381 et seq.,[1] is very narrow.  Although phrased differently in plaintiff's brief, it is essentially whether the Administrative Law Judge (ALJ) whose decision upon de novo review entered November 21, 2005 following an evidentiary hearing held March 7, 2005 stands as the defendant's final determination consequent to denial of review thereof by the Appeals Council on July 20, 2007 erred in relying upon testimony of a vocational expert, Ms. Barbara Burk.

The ALJ found that the plaintiff cannot lift or carry more than 10 pounds occasionally or 5 pounds frequently; cannot walk longer than 5 minutes, stand longer than 30 minutes or sit longer than 30 minutes without taking a break from such activities; cannot do work that requires contact with the general public or more than minimal contact with supervisors and co-workers; cannot do

---

[1]The plaintiff's application was filed on October 28, 2002, and alleged disability as of December 22, 2001.

work that requires more than low production quotas; and, can only do simple 1-step and 2-step work. The plaintiff does not challenge these determinations on this appeal. In his questioning of Ms. Burk the ALJ propounded a hypothetical question assuming an individual of the plaintiff's personal/vocational profile with such capabilities/limitations.

    The critical testimony of Ms. Burk was as follows:

> ALJ: Okay. Are there any other jobs in the region or national economy that this hypothetical person could do?
>
> VE: Well, it's a very restrictive RFC. The individual would be able to do some assembly jobs. A semi-conductor assembler. Well, a lens inserter is an unskilled sedentary job. DOT 713.687-026. Sedentary, unskilled. A final assembler is 713.687-018. Those are sedentary as found in the DOT. We would find jobs such as small products assembler, which is an unskilled job, and is in the DOT at light but the statistical data base just exists at the sedentary level also. And with this RFC, not only does it have to be sedentary, but it has to be where it would allow for a sit/stand option because of the 30 minutes at one time sitting, and then the 30 minutes at one time standing.
>
> ALJ: And you say such jobs exist?
>
> VE: Yes. And I am greatly reducing the occupational base to accommodate the need for the low production quotas, as well as the sit/stand option and minimal contact with co-workers. There would be approximately 500 to 600 within northeastern Ohio.
>
> ALJ: This is for the aggregate? Aggregate total for all of the above?
>
> VE: Yes.
>
> ALJ: Aggregate total is how much?

VE: 500 to 600 regionally, which is northeastern Ohio. Approximately 2,500 within the state of Ohio. Approximately 40,000 within the United States.

ALJ: Any others?

VE: I need some time because of the one/two steps. And the low production quotas, the sit/stand option. (INAUDIBLE) accommodate a job—

ALJ: For more than what you've given us.

VE: Right.

ALJ: As you know, I'm not looking for accommodated jobs.

VE: Right. But when we take out contact with the public, one/two steps, low production, sit/stand option—there are so many factors here to consider.

ALJ: Well, if you don't think there are any more, and that's your testimony, then that's your testimony.

VE: Right.

ALJ: So you have to call them as you see them.

VE: That is what I see.

ALJ: Ms. Bron? [sic] Any questions for this witness?

ATTY: Ms. Burk, when you said 500 to 600, what is that based on?

VE: Well, I dramatically reduced the number, just from my observation. I think that most jobs would have something more than the low production standards of one/two steps, and you can't do an SVP of 3 (INAUDIBLE) and a sit/stand option. So that even if I were to reduce it 50 percent—the normal number—we'd have about 1,000 jobs. So you can see I dramatically reduced it.

3

ATTY: Okay. But I guess I'm trying to figure out where you get the 500 to 600.

VE: Okay. Just from my knowledge of the labor market. There wouldn't be any statistical data that would show us specifically that.

ATTY: So it could be less? It could actually be like 100? I mean, with all of these limitations in combination?

VE: It's improbable that it would be that low.

ATTY: What about 200? It could go as low as 200?

VE: I really don't think so. I reduced the number so much from the overall number of sedentary entry-level jobs. There are about 1,400 entry-level sedentary assembly jobs. And so taking that and reducing it—

ATTY: Okay. Well, just so I, I can—are you aware of any position in the northeast Ohio area with any particular business that would accommodate all of these limitations?

VE: Well, just basic—putting pieces together.

ATTY: Right. Right. But then there would be a sit/stand option, minimal contact with supervisors and co-workers, no contact with the public, low production quotas. Is there a specific business that you are aware of that would allow for these accommodations?

VE: Well, businesses like in the electronics industry where they're just working with a small product. You know, where they're just putting small pieces and parts. And it's not interacting with a co-worker. They're not working in teams. There is somebody next to them, but there is not the need to interact like a team production.

ATTY: I guess you're not understanding my question. You're saying that she couldn't do all the small part assembler jobs in northeast Ohio.

4

VE: Right.

ATTY: These limitations would preclude that. And so you have one limitation that would be a sit/stand option. So that would reduce the numbers. You'd have another limitation of low production quota. So that would further reduce the numbers. Then you'd have another limitation of one and two step tasks. Further reduction. And then the minimal contact with supervisors and public. Further reduction. So you get down to a very low number. But what I'm asking you, because you're just basing this generally, do you have in mind a specific business that would allow all these accommodations?

VE: Nothing—no specific business. Just general assembly. Not a specific job.

ATTY: Thank you.

ALJ: I would point out, counsel, that she not only gave numbers for northeast Ohio, but also for the whole state and for the country.

ATTY: I understand.

ALJ: And that same question I don't think would be fair if you were going to say—if you were going to start talking about the United States as a whole. I mean, she said 40,000 jobs, approximately, nationwide. To ask if she knows a specific employer outside of Ohio who would be willing to offer a job that meets all the requirements in the hypothetical as I asked for, that's—

ATTY: Right. But the fact that there isn't one single job in Ohio that would meet the requirement—

ALJ: She didn't say that. What she said was she couldn't name a particular employer that had a specific job. If you're going to suggest that in the absence of that that I should discredit her testimony, which is what I think you're doing—

5

ATTY:   Right. Because I—if there isn't one specific employer that would accommodate all these limitations, I don't know how she can—and she doesn't have any specific data to say that there are 500 jobs available for this, I don't know that you can actually accept that testimony that there is that specific number of jobs.

ALJ:    Well, I am noting your point. Go ahead.

ATTY:   I don't have any further questions.

ALJ:    I forget to ask you Ms. Burks—I'll ask you now. You testified that there are some differences between your testimony and what the DOT has to say. Are there any others that, you haven't mentioned?

VE:     No.

ALJ:    So the only inconsistencies are the ones you've mentioned specifically in your testimony.

VE:     Right.

On this appeal plaintiff argues:

> Ms. Burk's testimony demonstrates that she did not have any support for her response to the hypothetical question propounded by the ALJ. She testified that there was no statistical data to support her response. Ms. Burk testified that she approximated the number of jobs based on her observation and knowledge of the labor market. (TR. 278). Yet, she could not identify one single business in the northeast Ohio area which would allow the limitations in the hypothetical question. (Tr. 280).
>
> The ALJ reviewed Ms. Burk's testimony and stated that he finds it credible because it is based on her professional experience, it is based on sources of reliable data and it is uncontradicted. (Tr. 25). The ALJ then went on to state that he is not aware of any authority stating that it is necessary for a vocational expert to be able to name a specific employer who has a job that meets the residual functional capacity in order for the Commissioner to meet the burden of proof. (Tr. 26). While the ALJ may be correct in that there is no

6

> authority requiring that a vocational expert identify a specific employer, the ALJ is still required to evaluate the reliability of the vocational expert testimony. The only source Ms. Burk identified in her testimony was the DOT (which describes job requirements, not employment statistics). She did not identify any source which provided support for the number of jobs given. What she did state was that the number of jobs given was based upon her observation and knowledge of the labor market. Thus, it was not unreasonable to ask her to identify a specific employer.
>
> Ms. Burk's testimony is not supported by any reliable data. Her testimony is based solely on speculation and conjecture. Speculation and conjecture provide the reliable evidence the Commissioner needs to sustain his burden at step five of the sequential evaluation process. There is not substantial evidence in the record to support a finding that Ms. Conklin, given her specific limitations, is capable of performing a significant number of jobs.

While creative, this Court finds the foregoing argument to be legally insufficient. This Court believes that it was entirely proper for the vocational expert to testify based upon the knowledge she had gained in thirty-five years experience in the labor market. The purpose of eliciting testimony from an expert witness is to have the benefit of that individual's expertise on a given subject matter. The contention that the vocational expert was required to identify any specific potential employer is inconsistent with the decision in Hardaway v. Secretary of Health and Human Services, 823 F.2d 922, 928 (6th Cir. 1987). It is also inconsistent with the controlling legal standard of ability to do work other than that a claimant has previously performed, which is that "Any other work (jobs) that you can adjust to must exist insignificant numbers in the national economy (either in the region where you lie or in several regions in the country)" 20 C.F.R. §416.960(c)(1).

Quite frankly, this court believes that Ms. Burk gave the plaintiff the benefit of all doubt in reducing the number of jobs she believed someone such as the plaintiff could perform, and the

7

plaintiff does not argue that the numbers identified by Ms. Burk in the national, state and regional economies fail to meet the "significant numbers" requirement.

Based upon the foregoing, this Court recommends that final judgment be entered in the defendant's favor.


                                        s/DAVID S. PERELMAN
                                        United States Magistrate Judge


DATE:   May 28, 2008


## OBJECTIONS

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).